UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRUCE SMITH,** | } |
| Plaintiff, | } |
| v. | } Case No.: 2:18-cv-00016-ACA |
| **FRANKLIN COLLECTION SERVICE,** | } |
| Defendant. | } |

# MEMORANDUM OPINION

In this action, *pro se* plaintiff Bruce Smith challenges Defendant Franklin Collection Service Inc.'s ("Franklin") practices concerning Franklin's efforts to collect a debt that Mr. Smith owed AT&T. Mr. Smith asserts two federal claims against Franklin. First, Mr. Smith contends that Franklin violated the Fair Debt Collection Practices Act ("FDCPA") by failing to adequately verify the debt that he owed AT&T. Second, Mr. Smith contends that Franklin violated the Fair Credit Reporting Act ("FCRA") by failing to report accurate information concerning the debt to credit reporting agencies.

Before the court is Franklin's motion for summary judgment. (Doc. 8). The parties have fully briefed the motion. (Docs. 9, 10, 13, 15, 16). Because Mr. Smith has not presented evidence creating a question of fact that Franklin violated the FDCPA or the FCRA, the court **WILL GRANT** the motion.

I.     **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P.

56(c)(1)(A); *see Anderson*, 477 U.S. at 252 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

The court views the evidence in the light most favorable to the non-moving party. *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018). The court "may not weigh conflicting evidence or make credibility determinations of its own." *FindWhat Inv'r Grp.*, 658 F.3d at 1307. "If the record presents disputed issues of fact, the court may not decide them; rather, it must deny the motion and proceed to trial." *Id.* at 1307. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

## II. BACKGROUND

### A. Mr. Smith's Challenges to Franklin's Statement of Facts

In response to Franklin's motion for summary judgment, Mr. Smith challenges a number of Franklin's statements of fact. For example, Mr. Smith disputes the following two statements:

- "AT&T placed an account for collection with Franklin on September 6, 2017" (Doc. 15, p. 7) (citing Doc. 9, p. 4, ¶ 2), and

- "Franklin reported the debt as disputed to credit reporting agencies from the time the Plaintiff disputed that he owed the debt." (Doc. 15, pp. 7-8) (citing Doc. 9, p. 6, ¶ 7).

To support these statements, Franklin submitted an affidavit from Sherri Y. McClain, Franklin's Director of Compliance. (*See* Doc. 9-1, p. 4, ¶ 8; Doc. 9-1, p. 5, ¶ 12). Mr. Smith argues that the court should not accept the factual statements because Franklin did not provide "tangible evidence" to support the statements beyond Ms. McClain's assertions in her affidavit. The court is not persuaded.

Rule 56 of the Federal Rules of Civil Procedure does not "require that an otherwise admissible affidavit be corroborated by independent evidence." *United States v. Stein*, 881 F.3d 853, 858 (11th Cir. 2018). "Rule 56(c) states only that an affidavit must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Ms. McClain's affidavit meets these requirements. (*See generally* Doc. 9-1, pp. 3-6). Therefore, Franklin has properly supported the challenged statements with admissible evidence through Ms. McClain's affidavit. Franklin is not required to

corroborate Ms. McClain's testimony with additional evidence. *See Stein*, 881 F.3d at 858.

Mr. Smith also disputes Franklin's assertion that it reported the debt as disputed because Mr. Smith "received no indication from Franklin nor the Credit Reporting Agencies that the debt was reported as disputed." (Doc. 15, p. 8). Mr. Smith makes similar arguments with respect to two other factual statements. For example, Mr. Smith disputes that Franklin sent him a letter on September 7, 2017 informing him that "Franklin was attempting to collect a debt owed to AT&T in the amount of $146.26" because according to Mr. Smith, he did not receive a copy of the September 7, 2017 letter. (Doc. 15, p. 8). In addition, Mr. Smith disputes that "Franklin ceased all collection activity when it received notice from the Plaintiff that he disputed the debt" because according to Mr. Smith, "he received no indication from the Defendant that collection had ceased." (Doc. 15, pp. 7-8).

Franklin provides evidentiary support for all three of these factual assertions through Ms. McClain's affidavit. (*See* Doc. 9, p. 5, ¶ 4; Doc. 9, p. 6, ¶¶ 7, 9). That Mr. Smith did not receive the September 7, 2017 letter or notice that the debt was reported as disputed and that Franklin ceased collection on the debt once Mr. Smith disputed the debt does not negate the

assertions of fact in Ms. McClain's affidavit. Mr. Smith has not offered evidence to contradict the information contained in Ms. McClain's affidavit with respect to these statements of fact. Although the court must view the evidence in the light most favorable to Mr. Smith, the court finds that Mr. Smith has not identified a disputed issue of fact regarding Franklin's statements of facts.

Given that Mr. Smith has not adequately disputed Franklin's factual statements, the undisputed material facts, discussed below, demonstrate that summary judgment is appropriate.

### B.     Undisputed Material Facts

AT&T placed an account for collection with Franklin on September 6, 2017, in the amount of $148.26 owed by Mr. Smith to AT&T. (Doc. 9-1, p. 4, ¶ 8). On September 7, 2017, Franklin sent Mr. Smith a letter explaining that Franklin was attempting to collect a debt owed to AT&T in the amount of $148.26. (Doc. 9-1, p. 4, ¶ 9; Doc. 9-1, pp. 8-9). The letter stated:

> Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that the debt, or any part thereof, is disputed this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

> If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

(Doc. 9-1, p. 9).

On October 26, 2017, Equifax notified Mr. Smith of a new collection that Franklin placed against Mr. Smith in the amount of $148.00. (Doc. 15, p. 14). According to the Equifax, the collection changed Mr. Smith's credit score from 741 to 644. (*Id.*). On October 27, 2017, Mr. Smith sent Franklin an email indicating that he "received notification . . . that a collection has been added to [his] credit report under Franklin Collection Services for $148" and that he "[does] not have any unpaid accounts and request[s] that it is removed TODAY." (Doc. 9-1, p. 11). Mr. Smith stated, "If this is not removed TODAY, I will file a civil suit against you and whoever you bought the alleged debt from in the Circuit Court of Jefferson County Alabama [on] Monday morning." (*Id.*).

When Franklin received notice on October 27, 2017 that Mr. Smith disputed the debt, Franklin ceased collection activity. (Doc. 9-1, p. 5, ¶ 12). On November 1, 2017, Franklin sent Mr. Smith a letter titled "Itemization, Verification and Validation of Debt, Denying Inaccuracy." (Doc. 9-1, p.

13). The letter explained that Mr. Smith incurred the debt to AT&T on March 13, 2017, and the account was placed with Franklin for collection on September 6, 2017. (*Id.*).

Franklin reported the debt as disputed to credit reporting agencies from the time Mr. Smith disputed that he owed the debt. (Doc. 9-1, p. 6, ¶ 14). On December 8, 2017, Franklin withdrew the credit reporting and took no additional steps to collect the debt. (Doc. 9-1, p. 6, ¶ 15).

On April 23, 2018, Mr. Smith received a notice from another debt collection company, ERC. (Doc. 15, p. 29). The notice states that a $148.26 balance with AT&T had been placed with ERC for collection efforts. (*Id.*). Franklin has no legal relationship to ERC, and Franklin did not refer Mr. Smith's debt to ERC or any other collection agency. (Doc. 13-1, p. 3, ¶ 4).

In his complaint, Mr. Smith generally "challenges the practices of Franklin Collection Services regarding debt collections." (Doc. 1-1, p. 9, ¶ 15). In response to Franklin's motion for summary judgment, Mr. Smith clarifies his allegations against Franklin. Mr. Smith claims that Franklin violated the FDCPA by failing to adequately verify the AT&T debt and that Franklin breached its duty under the FCRA because Franklin "failed to report

accurate information to the credit agencies" and failed to "correct and update information promptly." (Doc. 15, pp. 9-13).

## III. DISCUSSION

### A. FDCPA Claim

Under the FDCPA, if a consumer notifies a debt collector in writing of a dispute within 30 days of receiving a demand notice, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . , or the name and address of the original creditor, and a copy of such verification . . . , or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). "The plain language of Section 1692g(b) mandates that a debt collector 'cease collection of the debt' once verification is requested." *Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 374 F.3d 1011, 1014 (11th Cir. 2004). "[A] debt collector is not required to take some other affirmative step if the consumer disputes the debt." *Hepsen v. Resurgent Capital Sers., LP*, 383 F. App'x 877, 881 (11th Cir. 2010) (citing *Shimek*, 374 F.3d at 1014). "Only if the debtor disputes the debt during the validation period, must all debt collection activities stop 'until the debt

9

collector obtains verification of the debt.'" *Decarlo v. McKinnon*, 2014 WL 12214345, at *3 (S.D. Fla. July 31, 2014) (citing 15 U.S.C. § 1692g).

As an initial matter, Mr. Smith has not demonstrated that he disputed the debt within 30 days of receipt of a demand notice. Franklin sent Mr. Smith a validation letter on September 7, 2017. (Doc. 9-1, p. 4, ¶ 9; Doc. 9-1, pp. 8-9). Although Mr. Smith contends that he did not receive the September 7, 2017 letter, Mr. Smith has not produced admissible evidence through a declaration, affidavit, or otherwise, to support this unverified assertion. More than 30 days passed before Mr. Smith disputed the debt by email on October 27, 2017. (Doc. 9-1, p. 11).

Assuming that Mr. Smith's October 27, 2017 email triggered Franklin's duties under § 1692g(b), the undisputed evidence establishes that Franklin complied with the statute because Franklin ceased collection activity when it received notice on October 27, 2017 that Mr. Smith disputed the AT&T debt. (Doc. 9-1, p. 5, ¶ 12). Because Mr. Smith has presented no evidence demonstrating that Franklin engaged in collection activity after receiving notice of Mr. Smith's dispute but before verifying the debt, Franklin is entitled to judgment as a matter of law on Mr. Smith's FCRA claim. *See Hepsen*, 338 F. App'x at 881-82 ("The plain language of §

1692g(b) requires only that a debt collector *cease collection* of the debt if it is disputed, unless the debt collector verifies the debt or the name and address of the original creditor and mails that information to the debtor.") (emphasis in original); *Sanchez v. United Collection Bureau, Inc.*, 649 F. Supp. 2d 1374, 1381 (N.D. Ga. 2009) ("When a consumer requests validation of a debt pursuant to the FDCPA, the debt collector is required to cease collection of the debt until it provides verification of the debt to the consumer. A debt collector is not required to verify the debt, but instead may cease all collection activity on the account.").

Although § 1692g(b) did not require Franklin to do anything other than cease debt collection activity upon notice that Mr. Smith disputed the debt, Franklin did more. Franklin sent Mr. Smith a verification of the debt on November 1, 2017. (Doc. 9-1, p. 13). Mr. Smith argues that the verification letter is inadequate because it does not identify what services AT&T provided to Mr. Smith; it does not provide an itemization of the charges; and it does not explain how the debt was incurred. (Doc. 15, p. 10).

The FDCPA does not define what constitutes adequate verification under § 1692g(b). Citing an opinion from the Sixth Circuit Court of Appeals, Mr. Smith submits that a debt verification letter

should provide the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on a certain date.

Such a notice requirement has the advantage of providing a clear standard that courts are accustomed to enforcing and can apply easily. Moreover, in today's world of computerized records management, it would not be a significant burden to debt collectors or creditors to provide such a record.

(Doc. 15, p. 11) (quoting *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 786 (6th Cir. 2014)).

*Haddad* is not binding on this court. Neither party cites, and the court has not located, a published decision from the Eleventh Circuit addressing the sufficiency of a verification letter under § 1692g(b). In an unpublished opinion, the Eleventh Circuit found that a debt collector complied with § 1692g(b)'s verification requirement when the debt collector sent the plaintiff notices that included the creditor's name, address, and telephone number and that "detailed the date, description, assessment amount, interest amount and total amount due." *Madura v. Lakebridge Condominium Ass'n Inc.*, 382 F. App'x 862, 864 (11th Cir. 2010). This holding is consistent with the position adopted by the Fourth Circuit Court of Appeals and followed by a number of other courts, including district courts in the Eleventh Circuit. *See Chaudhry*

*v. Gallerizzo*, 174 F. 3d 394, 406 (4th Cir. 1999) ("[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed."); *Goodwyn v. Capital One, N.A.*, 127 F. Supp. 3d 1367, 1377 (M.D. Ga. 2015) (finding that verification letter satisfied debt collector's obligation under § 1692g(b) because the documentation included the names of the debtor and creditor, the account number, and a calculation of the deficiency balance); *McCloud v. HSBC Bank USA NA*, 2014 WL 11455989, at *12 (N.D. Ga. Aug. 14, 2014), *report and recommendation adopted by* 2014 WL 11455990 (N.D. Ga. Aug. 29. 2014), *and aff'd,* 618 F. App'x 660 (11th Cir. 2015) (debt collector's letter that provided "information verifying the debt and informing [debtor] of the identity of the original lender for the loan" complied with § 1692g(b)).

Here, Franklin's November 1, 2017 debt verification letter included Mr. Smith's name and address, the name and address of the creditor (AT&T), Mr. Smith's account number with AT&T, the date on which he incurred the debt, the original and current balance ($148.26), and the date on which AT&T placed the account with Franklin for collection. (Doc. 9-1, p. 13). Thus, the letter satisfied Franklin's obligation to verify the debt under § 1692g(b). *See e.g., Madura*, 382 F. App'x at 864. Franklin's debt

verification letter was not as detailed as Mr. Smith would have preferred, and the letter did not include an itemization or information regarding the specific nature of the transaction between Mr. Smith and AT&T; however, the letter provided Mr. Smith with notice of "when the debt was originally incurred or other sufficient notice from which he could sufficiently dispute the payment obligation." *Haddad*, 758 F.3d at 785-86. Accordingly, Franklin is entitled to judgment as a matter of law on Mr. Smith's FDCPA claim.

B.  **FCRA Claim**

The FCRA imposes two separate duties on furnishers of information to credit reporting agencies. Furnishers of information like Franklin "are required to (1) report accurate information to [credit report agencies] regarding consumers, *see* 15 U.S.C. § 1681s-2(a); and (2) conduct an investigation after receiving notice from a [credit reporting agency] of a dispute lodged by a consumer regarding information provided by the furnisher, *see id.* § 1681s-2(b)." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018).

"Consumers have no private right of action [under § 1681s-2(a)] against furnishers for reporting inaccurate information to [credit reporting agencies] regarding consumer accounts." *Id.* (citing 15 U.S.C. § 1681s-

2(c)(1)). "Instead, the only private right of action consumers have against furnishers is for a violation of § 1681s-2(b), which requires furnishers to conduct an investigation following notice of a dispute." *Id.* Although the FCRA provides a private right of action for an alleged violation of § 1681s-2(b), duties imposed on a furnisher of credit information under § 1681s-2(b) do not arise until after the furnisher receives notice of a dispute from a credit reporting agency. *Green v. RBS Nat. Bank*, 288 F. App'x 641, 642 (11th Cir. 2008) ("The FCRA does provide a private right of action for a violation of § 1681s-2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency.") (citing 15 U.S.C. § 1681s-2(b)(1)).

Mr. Smith disputed the AT&T debt with Equifax on October 30, 2017. (Doc. 15, p. 30). But Mr. Smith has not presented evidence demonstrating that Equifax or another credit reporting agency provided notice to Franklin of a dispute, which is required to trigger Franklin's duty to investigate under the FCRA. Therefore, Franklin is entitled to judgment as a matter of law on Mr. Smith's FCRA claim. *See Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009) (dismissing plaintiff's FCRA claim because he did not allege that furnisher of credit information failed to conduct an investigation "after being

15

notified of a dispute by a credit reporting agency"); *Bosarge v. T-Mobile USA, Inc.*, 2008 WL 725017, at *3 (S.D. Ala. Mar. 17, 2008) (granting summary judgment in favor of furnisher of credit information because the plaintiff "presented no evidence" that any credit reporting agency notified the furnisher of a dispute).

## IV. CONCLUSION

For the reasons stated above, the court **WILL GRANT** Franklin's motion for summary judgment and **WILL** enter judgment as a matter of law in Franklin's favor. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this August 30, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE